**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SEAN A. EYMARD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-9097** |
| **MICHAEL J. ASTRUE,** **COMMISSIONER OF SOCIAL** **SECURITY ADMINISTRATION** | **SECTION "K" (3)** |

### REPORT AND RECOMMENDATION

Before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff exhausted his administrative remedies and thus, the matter is ripe for review. Having reviewed the motions, administrative record and applicable law, **IT IS RECOMMENDED** that the Court DENY the Commissioner's Cross Motion for Summary Judgment, the decision of the Commissioner be REVERSED and that Plaintiff's Motion for Summary Judgment be GRANTED IN PART, that is, only insofar as it seeks REMAND for further proceedings consistent with this report.

### I. BACKGROUND

Plaintiff/claimant, Sean A. Eymard ("Eymard"), seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Act ("the Act") of the Social Security Administration Commissioner's final decision denying his claim for Disability Insurance Benefits (DIB) and

1

Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.[1] Eymard claimed that he became unable to work on July 11, 2002[2] due to disabling conditions, to wit: depression, seizures and alcoholism.[3]

On August 11, 2003, plaintiff's disability request was initially denied.[4] Roberts then requested a hearing before an Administrative Law Judge,[5] stating that "I am unable to sustain work activity" and further indicating that he had additional evidence "to be submitted."[6] On October 19, 2004, plaintiff appeared before Administrative Law Judge (ALJ) Mark Dawson represented by counsel.[7] In addition to plaintiff, his mother, Beverly Lacombe, and Vocational Expert (VE) John Yent appeared and testified at the hearing.

On November 12, 2004, ALJ Dawson issued a decision finding Eymard "not disabled" utilizing the five factor analysis, to wit: (1) Claimant meets the non-disability requirements and is insured for benefits; (2) Claimant has not engaged in substantial gainful employment since the alleged date of onset; (3) Claimant's alcoholism and anxiety/depressive disorder are "severe" within the meaning of the regulations; (4) Claimant's medically determinable impairments do

---

[1]*See* Applications for Disability Insurance Benefits and Supplemental Security Income [Adm. Rec. 97-99].

[2]*Id.*

[3]Adult Disability Report, Section 2 [Adm. Rec. 99-B].

[4]*See* Disability Determination [Adm. Rec. 43].

[5]*See* Request for Hearing By Administrative Law Judge dated August 22, 2003 [Adm. Rec. 50].

[6]*Id.*

[7]*See* Transcript of the October 19, 2004 Hearing [Adm. Rec. 419-440].

2

not meet listing level severity; and (5) But for claimant's alcoholism, claimant can perform his past relevant work as a floor installer. ALJ Dawson further found that "[w]hen the claimant's impairments are evaluated taking into account the effects of his alcoholism, he meets listing 12.09" and that "[a]coholism is a fact material to a finding of disability."[8]

Eymard requested review and the Appeals Council granted same, vacating and remanding the case for further proceedings with instructions. The Appeals Council found that further development and evaluation of his seizure impairment was necessary. The Council highlighted that medical records from Chabert, Lady of the Sea Hospital and Dr. Roger Blanchard diagnose seizures and indicate that Eymard was prescribed Dilantin to address this condition; however, the ALJ concluded that there was no evidence that claimant had ever been diagnosed with seizures. The opinion did not contain an evaluation of the treating source opinion (Dr. Blanchard) that Eymard was unable to work because he was undergoing treatment for seizures and that return to work would be medically ill-advised due to neurological and psychogenic disorders. The decision further failed to provide a function-by-function assessment of his ability to perform work-related physical and mental activities without the effects of drug addiction and alcoholism. Upon remand, the ALJ was instructed to do the following:

» Obtain additional medical evidence regarding claimant's seizure disorder.

» Give consideration to the treating source opinion, obtain additional evidence and develop same.

» Further evaluate claimant's subjective complaints and provide rationale in accordance with Social Security Ruling 98-7p.

» Further evaluate claimant's mental impairments utilizing the psychiatric review

---

[8]ALJ Dawson's Decision dated November 12, 2004 at [Rec. Doc. 34-39].

technique and document the application by providing specific findings and appropriate rationale for each functional area.

» Give further consideration to the claimant's functional capacity and, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments.

» Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on claimant's occupational base.

» If the claimant is found to be disabled, conduct further proceedings required to determine whether drug addiction/alcoholism are contributing factors material to the finding of disability.[9]

On May 10, 2006, a supplemental hearing was conducted by ALJ Gary L. Vanderhoof in Gray, Louisiana. Plaintiff, his mother (Ms. Lacombe) and VE Mary Kathryn Elvir appeared and testified.

Eymard was 35 years old at the time of the second hearing. He had marginal special education and past work experience as a floor installer and a carpenter's helper. Plaintiff testified that he attended special education and cannot read or write very well. Eymard indicated that he needs help filling out a job application and that, in order to pass the examination to get his driver's license, the test was administered orally.[10] As to work history, Eymard testified that his past work experience was as a carpenter's helper and a floor installer. He testified that he

---

[9] Order of Appeals Council dated January 5, 2005 [Rec. Doc. 87-89].

[10] Transcript of the May 10, 2006 Hearing conducted by ALJ Gary L. Vanderhoof [Adm. Rec. 387-388]. See also Disability Report dated May 15, 2003 (noting that claimant was accompanied to the interview by his mother who answered most of the questions and for most of the interview he sat quietly looking at the floor) [Adm. Rec. 103]; Disability Report at Section 7 (indicating he attended special education classes at Galliano Elementary School) [Adm. Rec. 99-H]. Correspondence of Beverly Lacombe (Eymard's mother) dated February 24, 2005 (stating that she has power of attorney because it is necessary so that she has access to his medical records and he is incapable of written responses, paperwork and applications of any kind) [Adm. Rec. 96].

4

did not order materials or do any of the mathematics and simply installed sheet flooring.[11]

Addressing his seizure disorder, plaintiff testified that he had both types of seizures ("Grand mal and staring").[12]  He testified that Dr. Blanchard prescribes Dilantin for his seizures, which are debilitating.  Eymard explained that, when he tried to go back to work installing floors, he could not be relied upon to show up for a job because of his seizures, which occurred frequently (several times a week).[13]

Explaining his depression symptomotology, plaintiff explained that he had been working since he was 14 years old and then he "could not do it anymore" and began feeling worthless.  He testified that he was hospitalized once when he tried to kill himself.[14]  Eymard testified that he has been alcohol free for approximately three years.  He quit drinking a number of months prior to the first social security hearing.[15]

Regarding his medications, Eymard indicates that he takes his medications pretty regularly *because his mother reminds him*.  He lives in a trailer next to hers on the lot that his mother owns.[16]  Plaintiff's mother explained that Eymard lived alone until he began having seizures.[17]  Ms. Lacombe testified that she checks on him regularly and gives him his medication

---

[11]Transcript of the May 10, 2006 Hearing [Rec. Doc. 387-388].

[12]*Id.* [Rec. Doc. 389].

[13]*Id.* [Rec. Doc. 389-390].

[14]*Id.* [Rec. Doc. 391].

[15]*Id.* [Rec. Doc. 392].

[16]*Id.* [Rec. Doc. 393].  *See also* Transcript - Eymard's Testimony (indicating that his mother makes sure that he is on schedule taking his medication) [Rec. Doc. 393].

[17]*Id.* [Rec. Doc. 396].

three times a day. When Ms. Lacombe is not available to do so, Eymard's girlfriend makes sure that he takes his medication.[18] Ms. Lacombe testified that, even taking his medication regularly, Eymard has one or two grand mal seizures a week. If he is having a particularly bad week, he may have as many a three seizures.[19]

Ms. Lacombe described Eymard's condition following a seizure as very incoherent. She indicated that he then gets a very bad headache and, after she gives him his post-seizure medication, Eymard sleeps for hours at time. She described his condition following a seizure as "very weak" and further explained that he suffers a lot of pain because of the muscle spasm that occurs during a seizure.[20]

As to his daily activities, Ms. Lacombe testified that Eymard takes care of his room and takes the garbage out.[21] According to Ms. Lacombe, the heaviest thing he can lift is twenty-pound bag of dog food.[22] Eymard does not do yard work.[23]

On May 24, 2006, ALJ Vanderhoof issued a decision finding the plaintiff not disabled. The ALJ's findings are again deficient. They are reiterated below:

1. As of the alleged onset date, claimant was insured for purposes of Title II of the Act.

2. Claimant has not engaged in the performance of substantial gainful activity

---

[18]*Id.* [Rec. Doc. 396-397].

[19]*Id.* [Rec. Doc. 398-400].

[20]*Id.* [Rec. Doc. 403].

[21]*Id.* [Rec. Doc. 396].

[22]*Id.* [Rec. Doc. 400].

[23]*Id.* [Rec. Doc. 401].

subsequent to July 11, 2002.

3.  The medical record documents the severe impairments set forth above. *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985) and SSR 96-3p. However, neither singly or in combination do these conditions meet or equal the criteria for any impairment set forth in Appendix 1, Subpart P. Regulations No. 4.

4.  Claimant is a younger individual, has an 8th grade education background, and has past relevant work activity referenced above.

5.  The assertions of the claimant are clearly exaggerated, are not substantiated by the medical record, lack merit and are not credible to the extent maintained.

6.  Claimant has retained a residual functional capacity for physical activity subject to the constraints set forth in the hypothet.

\* \* \*

9.  Claimant cannot return to the performance of his past relevant work....

10. The vocational evidence demonstrates that there are a significant number of jobs in the state and in the nation which claimant can perform.

11. Claimant was not disabled at any time through the date of decision.[24]

Most notably, nowhere in his findings or in his evaluation of the evidence does the ALJ identify which impairments are considered "severe" within the meaning of *Stone, supra*. Plaintiff appealed the aforesaid decision, submitting additional evidence. The Appeals Council denied the request for review on September 23, 2007.[25]

The medical evidence is hotly disputed and is addressed in the context of this Court's analysis below.

## II. STANDARD OF REVIEW

### A. Substantial Evidence

---

[24] ALJ Vanderhoof's Decision dated May 24, 2006 [Rec. Doc. 22].

[25] Notice of Appeals Council Action dated September 23, 2007 [Rec. Doc. 5].

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence they must be affirmed. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, reweigh the evidence or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.

Despite this limited function, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B).

### B. Entitlement to Benefits Under the Act

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 and Appendices, §§ 416.901 to 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

The five-step procedure for making a disability determination under the Social Security Act was restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001):

9

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 ( *quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)).

The four elements of proof weighed in determining whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflict in the evidence." *Id*.

### III. ASSIGNMENTS OF ERROR

Plaintiff submits the following assignments of error:

(1) Whether the ALJ properly identified Eymard's "severe" impairments;

(2) Whether the ALJ erred in finding that Plaintiff does not have a medically determinable anxiety/depressive disorder;

(3) Whether the ALJ erred in failing to discuss the applicable listings; and

(4) Whether the ALJ properly supported his credibility assessment of the plaintiff.

### IV. ANALYSIS

The dispositive issue before the Court is whether the ALJ erred in failing to identify which of the plaintiff's impairments were considered "severe" within the meaning of *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985) and SSR 96-3p and in finding that Plaintiff does not have the medically determinable mental impairment of depression despite the plaintiff's treating physicians' assessments.

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir.1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id*. at 1101. Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id.* at 1104. To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id*. at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000). Notwithstanding this

11

presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir.1986). Unless the correct standard of severity is used, the claim must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

In this case on remand from the Appeals Council, the ALJ cited the Fifth Circuit's precedent in *Stone, supra;* however, he did not state which of Eymard's impairments were considered "severe" within the meaning of the applicable regulations and Fifth Circuit jurisprudence.[26] Particularly troubling is the ALJ's categorical assertion that there was no evidence of a medically diagnosed mental impairment of depression.[27] This statement is inaccurate since Plaintiff presented more than minimal evidence to meet his burden to show that he suffered from the mental impairments of anxiety and depression. For instance, Plaintiff has a history of regularly taking two or more psychotropic prescription medications, including Xanax, Lexapro, Seroquel and Zoloft. Plaintiff also presented evidence of medical diagnoses of recurrent major depression. The statements from these doctors cannot all be dismissed out of hand since all are acceptable medical sources who can provide evidence to establish the

---

[26]*See* ALJ Vanderhoof's Findings [Rec. Doc. 22].

[27]The ALJ states regarding the plaintiff's mental condition as of August, 2003 that: "Though there was a complaint of depression, there was no mediation prescribed for this condition." [Rec. Doc. 19]. He further concluded based upon the state consultant Dr. Bergeron's evaluation which was expressly limited solely to Eymard's intelligence level and did not include an emotional evaluation designed to identify any dysthymic disorder (anxiety or depression, inter alia) that: "There were symptoms of depression but a definitive diagnosis was not rendered." [Rec. Doc. 20]. The ALJ later reiterated in no uncertain terms that: "Though depression was one of the bases maintained by claimant as a basis for disability, *this condition was not corroborated by objective medical evidence of record during the period at issue*" and "the consulting psychologist averred there were depressive symptoms but did not diagnose depression." (Emphasis added). [Rec. Doc. 21].

12

existence of a medically determinable impairment. 20 C.F.R. § 404.1513(a)(1). The relative weight accorded to the impairing effects of Plaintiff's depression and anxiety is something that should be addressed in the RFC assessment, *not at the determination of a severe impairment*. *See* 20 C.F.R. § 404.1520(a) (procedure for evaluating mental impairments); 20 C.F.R. § 404.1527(d) (weight accorded to medical opinions).

Defendant raises several arguments in support of the ALJ's determination. First, he contends that Plaintiff's subjective mental complaints must be corroborated by objective evidence. As stated in the preceding paragraph, objective medical evidence from several medical sources lends credence to Plaintiff's allegations of anxiety and depression. Second, Defendant contends that Dr. Blanchard did not treat Plaintiff for a mental impairment and that he simply wrote or renewed previous prescriptions for psychotropic medications. However, Dr. Blanchard's progress notes reflect that Eymard did not merely appear to pick up renewal prescriptions and/or medications; rather, said records show that plaintiff's weight, height and blood pressure were recorded. Defendant also contends that the inclusion of the limitation of work activity to routine, repetitive and non-complex activity suggests that the ALJ considered Eymard's depression or anxiety impairment as "severe" within the meaning of *Stone*. The ALJ's repeated statements that there was no medical evidence of depression demonstrates, to the contrary, that he did not consider the diagnoses of the plaintiff's treating physicians in the record. The statements further reflect that the ALJ selectively read the opinion of the consulting psychological examiner, Claude Bergeron, Ph.D, and the plaintiff's hospitalization records

13

sequelae to attempted suicide which reflect diagnoses of Major Depression.[28]

To recap, on November 12, 2004, ALJ Dawson found Eymard's alcoholism *and anxiety/depressive disorder* "severe" within the meaning of the regulations, but found no evidence that he had ever been diagnosed as suffering from seizures.[29] On remand and essentially on the basis of the same medical records, ALJ Vanderhoof determined that "[t]hough depression was one of the bases maintained by claimant as a basis of disability, this condition was not corroborated by objective medical evidence of record."[30] In this regard, ALJ Vanderhoof deferred to the consulting psychologist's report stating that, although Dr. Bergeron referred to depressive symptoms, he "did not diagnose depression."[31]

Most notably, the February 1, 2006 psychological evaluation completed by Dr. Bergeron upon which ALJ Vanderhoof relies, specifically states: "This evaluation **will only look at** his [Eymard's] **level of intelligence**."[32] Notwithstanding the foregoing, Dr. Bergeron observed that Eymard "seems to be a very negative person and his pessimism is more than evident." The consulting psychologist further noted that "[t]he possibility of a dysthymic disorder is *clearly evident* by his general demeanor."[33] Indeed, Dr. Bergeron's diagnostic impression as to DSM IV

---

[28]*See* Lady of the Sea Hospital and Behavior Unit Record (noting Major Depression with Suicide Attempt/Violence Risk 5-27-01) [Rec. Doc. 246]; (Major Depression 5-21-03) [Rec. Doc. 226, 228]; (Discharge Summary noting Major Depression 5-25-03 [Rec. Doc. 230].

[29]ALJ Dawson's Decision dated November 12, 2004 [Rec. Doc. 36, 38].

[30]ALJ Vanderhoof's Decision dated May 24, 2006 [Rec. Doc. 21].

[31]*Id.* [Rec. Doc. 20, 21].

[32]Psychological Evaluation by Clarence M. Bergeron, Ph.D. dated February 1, 2009 [Rec. Doc. 277].

[33]*Id.* [Rec. Doc. 278].

Axis I stated: "Rule Out Dysthymic Disorder [meaning anxiety neurosis or depression] With *More Complete Emotional Evaluation.*"[34]

Most notably, the Appeals Council remanded with a number of specific instructions, including "further evaluate claimant's mental impairments utilizing the psychiatric review technique and document the application by providing specific findings and appropriate rationale for each functional area."  Even the Appeals Council (as did ALJ Dawson in November of 2004) recognized the "severe" mental impairment (depression) and directed on remand that the ALJ utilize the Psychiatric Review Technique.

Treatment records from Lady of the Sea Hospital regarding treatment in May of 2003 include a psychiatric evaluation indicating that Eymard had psychomotor retardation, sparse communication depressed mood, a sad affect, impaired judgment and poor impulse control and diagnosed "Major Depression, Recurrent," *inter alia*.[35]  Plaintiff was prescribed a number of psychotropic medications in the hospital used to treat anxiety disorders and depression, including Trazadone, Zoloft and Xanax.[36]  On May 20, 2003, he was discharged to the home of his mother with a guarded prognosis and a final diagnosis of Major Depression.[37]

Plaintiff's treating physician, Dr. Roger Blanchard, regularly treated the plaintiff with

---

[34]*Id.* (emphasis added) [Rec. Doc. 279].

[35]Lady of the Sea General Hospital Records dated May 19, 2003 (noting Admit Impression Major Depression, Recurrent, and Plan to admit Eymard to the Behavioral Medicine Unit so that the psychiatric staff could manage his medications and treatment) [Rec. Doc 228].

[36]Lady of the Sea General Hospital Records [Rec. Doc. 230, 246].

[37]*Id.* at Discharge Summary Outline [Rec. Doc. 230].

anti-depressant/anti-anxiety medications including Xanax, Seroquel, Lexapro and Zoloft.[38] Moreover, contra the Appeals Council's instruction, the only Psychiatric Review Technique in the record predates the August 12, 2003 PRT, which is cognizant of the limited period of July 11, 2002 through August 12, 2003.[39]

ALJ Vanderhoof's decision fails to address whether he determined that the plaintiff's depression and anxiety disorder was "severe" or not. Moreover and as aforestated, the thrust of the ALJ's opinion is that the Eymard does not have a medically determinable depression/anxiety disorder at all.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir.1989) (*citing Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988) (per curiam)). However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. The Fifth Circuit leaves the district court no discretion to determine whether such an error is harmless; rather, the court mandates that "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added).

Because the Court finds that the ALJ failed to address the plaintiff's depression disorder at step 2 of the sequential disability determination process, *remand is required*. Since remand is required for an error at step 2 as it pertains to plaintiff's mental impairments, the Court does not consider the remaining issues for review.

---

[38]*See* Dr. Roger Blanchard's Records [Rec. Doc. 191-210].

[39]*See* PRT dated August 12, 2003 [Rec. Doc. 173].

16

On remand, the ALJ should give the proper consideration to plaintiff's treating physicians' medical opinions, together with *all* of the other evidence[40] which relates to plaintiff's multiple impairments, including his seizure disorder. Additionally, the pharmacy and physician/hospital records, showing plaintiff regularly filled psychotropic medication prescriptions (Xanax, Lexapro, Seroquel, Zoloft, *inter alia*), do lend some credibility to Eymard's complaints of debilitating depression and therefore should be considered by the ALJ on remand.[41] Additionally, the side effects of these medications, if any, should be considered in determining whether there is any work available that the claimant is capable of performing and whether the plaintiff is capable of performing regular work on a continuing and sustained basis. A complete psychiatric/psychological assessment and review should yield such information in the event that plaintiff's treating providers' statements fail to address the issue adequately.

The ALJ is required to consider any medical opinions (statements from acceptable sources), which reflect judgments about the nature and severity of the impairments and resulting limitations.[42] In this regard, the plaintiff submitted additional evidence to the Appeals Council and to this Court for consideration.

> When new evidence becomes available ... and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings. We review new evidence only to determine if a remand is

---

[40]*See Brenem v. Harris*, 621 F.2d 688, 690 n. 1 (5th Cir.1980).

[41]*See id.*, at 690 n. 1 (noting that, when remand is ordered, the hearing should cover all pertinent evidence, including evidence that might not otherwise warrant a remand for new evidence).

[42]*See* 20 C.F.R. § 416.927; Social Security Rulings 96-2p and 96-6p.

appropriate (internal citations omitted).[43]

The ALJ must be given the opportunity to specifically consider the comprehensive record, including any new and material evidence in the first instance. The additional evidence submitted to the Appeals Council and to this Court may have a detrimental effect on the RFC determination, which in turn could potentially affect the plaintiff's disability status determination.

Finally, if the plaintiff is found to be disabled, the ALJ should conduct further proceedings required to determine whether alcoholism is contributing factor material to the finding of disability.

The Court remains mindful that the Commissioner has the exclusive prerogative to weigh evidence and resolve conflicts, and further acknowledges that judicial review is both highly deferential to the Commissioner and limited in scope. The Court does not purport to direct a particular ultimate outcome upon remand. Therefore, upon remand, the Commissioner will be free to re-examine all issues and all of the medical evidence in light of the applicable standards discussed hereinabove.

## V. RECOMMENDATION

Based upon the foregoing discussion of the issues, evidence and the law,

**IT IS RECOMMENDED** that the Commissioner's Motion for Summary Judgment be DENIED, the Commissioner's decision be REVERSED and that Plaintiff's Motion for Summary Judgment be GRANTED IN PART, that is, only insofar as it seeks REMAND for further proceedings consistent with this report.

---

[43] *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995).

## VI. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this  31st  day of MARCH, 2009.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**